UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

04-40208-NMG

WHITE - Pro Se

Appellant

v.

CHAPTER 7 TRUSTEE

Appellee

On Appeal form the United States Bankruptcy Court
Western District of Massachusetts

APPELLANT'S  OPENING BRIEF

## OPENING BRIEF TABLE OF CONTENTS

**CODES**                                                                    **PAGE**

Federal Rules of Bankruptcy Procedure, Rule 8001 ............................................    1

11 U.S.C. § 158(a)(1)  ................................................................    1

11 U.S.C. § 101(10)  ..................................................................    7

11 U.S.C. § 348(d)  ....................................................................    7

11 U.S.C. § 1122  ......................................................................    7

11 U.S.C. § 101(14)  ..................................................................    8

11 U.S.C. § 327  ......................................................................    8

11 U.S.C. § 1103  ......................................................................    8

11 U.S.C. § 328(c)  ....................................................................    8


**CASES**

Harold L. Bowers d/b/a HLB vs. Baystate Technologies Inc., C.A. No. 91-40079 NMG.........  2

Bethea v. Robert J. Adams & Assocs., 352 F.3d 1125, 1127 (7th Cir. 2003)..........................  9

Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)............................................  10

Commonwealth of Puetro Rico v SS Zoe Conocotroni, 601 F.2d 39 (1st Cir. 1979)..................14

Pearson v. First NH Mortgage Corp., No. 98-2207 (1st Cir. 1999)...........................................14

## BRIEF HEADINGS

JURISDICTION ............................................................................................ 1

ISSUES ON  APPEAL  ................................................................................. 1

STANDARD OF REVIEW  ......................................................................... 2

STATEMENT OF CASE  ............................................................................ 2

      History................................................................................................ 2

      This Appeal....................................................................................... 3

      Facts.................................................................................................. 4

ARGUEMENT............................................................................................. 5

    There Really Will Be Only $365K left in the Estate for Unsecured Creditors................... 5

    Post-Petition Attorneys are Not Creditors................................................... 7

    Counsel Does Not Refute They Realized Their Fees Would Deplete the Estate ............ 9

    Counsel Concealed Facts Pertinent to Appellant's Objection to the Sale
    By Failing to Reveal Counsels' Fees ............................................................... 10

    It is Inequitable for the Bankruptcy Court to Consider
    the Missing Dividend as Immaterial ............................................................... 11

    Harold Bowers' Affadavit Reveals Price Fixing ........................................... 12

    Denial of Due Process ...................................................................................... 14

    Courts Should Use the "Colorable Claim" Standard to Determine Fraud ...................... 14

REMEDY....................................................................................................... 15

## JURISDICTION

This appeal is taken from the Bankruptcy Court's rulings on three related orders, one denying Appellant's Motion to Vacate the Sale Order based on Fraud on the Court, one denying Appellant's Motion to Reconsider, and one approving the Chapter 7 Trustee's Correction. The Bankruptcy Court's rulings on these three orders are final and appealable and this Court has jurisdiction to hear this appeal under the Federal Rules of Bankruptcy Procedure, Rule 8001, as provided in 28 U.S.C. § 158(a)(1).

## ISSUES ON APPEAL

1. Did the Bankruptcy Court abuse its discretion by failing to ascertain the true value of dividend available for distribution to unsecured creditors.

2. Did the Bankruptcy Court commit judicial err by regarding attorneys for the estate as creditors.

3. Did the Bankruptcy Court abuse its discretion by failing to find that the Debtor's counsel or the Unsecured Creditors's Committee counsel committed fraud on the Court.

4. Did the Bankruptcy Court abuse its discretion by failing to find that the Debtor's counsel or the Unsecured Creditors's Committee counsel committed fraud on Appellant.

5. Did the Bankruptcy Court abuse its discretion by failing to find that a contractual condition of the Sale Order has been breached because the $750K dividend promised to unsecured creditors has been depleted in half.

6. Did the Bankruptcy Court abuse its discretion by failing to consider Appellant's evidence of price fixing.

7. Did the Bankruptcy Court deny Appellant's right to due process by expediting the Court's

1

ruling, thereby denying Appellant a hearing, discovery, or testimony.

8. Did the Bankruptcy Court commit judicial err by applying the wrong standard when evaluating Appellant's fraud allegations.

## STANDARD OF REVIEW

Appellant contends that the abuse of discretion issues should be reviewed according to the sufficiency of the evidence standard; and the judicial err and due process issues should be reviewed de novo.

## STATEMENT OF CASE

### History

The Debtor filed bankruptcy to avoid paying a $6 mil. judgment issued by this Court in Harold L. Bowers d/b/a HLB vs. Baystate Technologies Inc., C.A. No. 91-40079 NMG. The Debtor conducted an expedited auction held just two months after declaring bankruptcy, and was able to transfer ownership of all of its assets for a fraction their worth to its next largest stockholder, Kubotek. Harold Bowers filed an objection to the sale, complaining that the Debtor was still violating Bowers' copyright and was still violating this Court's injunction which prohibited the Debtor's software from resembeling Bowers' software. Appellant objected to the expedited sale on grounds that Bowrers' objection needed to be resolved prior to the auction in order to clear title to the assets, and the auction was too hastily organized and would fail to generate a reasonable price for the assets. Five days prior to the auction both buyers threatened not to bid unless Bowers released them from liability. Bowers did not release the buyers and neither buyer bid at the auction. As a result, the assets went to Kubotek with the highest initial offer via its purchase agreement. Kubotek committed perjury on the witness stand and failed to

2

secure a good faith finding and withdrew from the sale. The other buyer also withdrew from the

sale and the auction ended after both buyers rejected the assets and declined to close. Ten days

after the auction Kubotek agreed to go forward when Bowers released Kubotek from liability and

Bowers waived his objection to the sale and waived his rights to appeal in exchange for a $1.3

mil. settlement. As a new condition of closing Kubotek required the estate to indemnify

Kubotek's perjury by setting aside $250K of sale proceeds to defend Kubotek against Appellant's

first appeal. On the final day of the Sale Hearing, the Debtor's counsel and the Unsecured

Creditor's Committee counsel (hereafter "counsel" collectively) promised that unsecured creditors

would receive a $750K dividend if the Bankruptcy Court approved the Sale Order. That dividend

has since been depleted in half due to counsels' administrative fees.

### This Appeal

Appellant motioned the Bankruptcy Court to vacate its Sale Order based on Appellant's

allegations that counsel committed fraud on the Court and fraud on Appellant, when, during the

Sale Hearings, between October 27, 2003, and November 6, 2003, counsel promised that $750K

would be available for creditors if the Bankruptcy Court approved the Sale Order (Appellant

Appendix: pg. 15-18). Now, a year later, it is apparent from accounting supplied by the Chapter 7

Trustee, that only $365K will be available for distribution to unsecured creditors due to $460K in

administrative fees incurred by the estate, which counsel always knew would be due, but did not

disclose at the Sale Hearings (AA: pg. 72-78) .

The Bankruptcy Court ruled on Appellant's Motion to Vacate, finding that no fraud was

committed when counsel said that creditors would get $750K, because "administrative claimants

3

are also creditors who are entitled to share in the proceedes held by the estate" ( AA: pg. 3, footnote 2). Appellant opposes the Bankruptcy Court's characterization that attorneys for the estate are creditors too. Counsel in this case do not meet the definition of creditors found in the Bankruptcy Code and counsel did not deplete the estate as creditors; counsel depleted the estate as administrative claimants. Additionally, during the sale hearings counsel specifically stated that unsecured creditors would receive a substantial dividend if the court approved the Sale Order (AA: pg. 18). Counsel always intended that unsecured creditors believe that unsecured creditors would receive a $750K dividend. Counsel made their misrepresentations that unsecured creditors would receive a substantial dividend of $750K in order to pursuade the Bankruptcy Court to approve the Sale Order; and, counsel made their misrepresentations in order to keep Appellant from opposing the sale on grounds that a $365K dividend to unsecured creditors would be inequitable.

## Facts

Kubotek paid $2.85 mil. for the Debtor's assets and the single secured creditor accepted $1.86 mil. on closing in satisfaction of its $2.2 claim, leaving $990K in the estate from the sale. On the day of the sale the Debtor had $285K in the bank, however, the Debtor had to repay the stalking horse $245K for loans and for the break-up fee. In the year following the sale, the Debtor received another $100K from Kubotek in adjustments for rent and accounts receivable. All together, counsel reported to the Bankruptcy Court that the estate would have $1.1 mil. cash on hand after the sale, which is uncontested by Appellant(AA: pg. 16).

At the auction Kubotek committed perjury on the witness stand and failed to obtain a "good faith" finding . Consequencially, as a new condition of closing the sale, Kubotek required

4

the estate to set aside $250K of the sale proceeds as an administrative expense to defend Kubotek against Appellant's first appeal. That left approximately $850K out of $1.1 mil. as cash on hand when counsel said $750K was available to creditors.

The Debtor's counsel held a $250K retainer and has been awarded a total of $463K in fees, of which $213K has been paid out of the estate's cash on hand. The Unsecured Creditors Committee counsel had no retainer and has been paid $93K, and has submitted another $18K application for Chapter 11 fees. The sales agent was paid $63K. The Unsecured Creditors Committee counsel also reports he has generated another $20K in Chapter 7 fees (he has been appointed as special counsel to the Chapter 7 Trustee) and he declined to estimate his or the Chapter 7 Trustee's remaining fees, which Appellant estimates to be $50K. Appellant calculates that total post-petition administrative fees in this case are $1 mil., of which $250K was paid by retainer, and $460K has and/or will be paid out of cash on hand and $250K is held in reserve to defend against Appellant's appeals (AA: pg. 72-78). That leaves approximately $365K in the estate for distribution to unsecured creditors.

## ARGUEMENT

### There Really Will Be Only $365K left in the Estate for Unsecured Creditors

In response to Appellant's Motion to Vacate, the Chapter 7 Trustee submitted two entirely different accountings, one to the Bankruptcy Court, and one to Appellant. The Chapter 7 Trustee's Opposition to Appellant's Motion to Vacate reported to the Bankruptcy Court that $717K was held by the estate (AA: pg. 6 pp.11); however, this accounting failed to disclose $100K of pending administrative fees, and this accounting also failed to disclose that the $250K reserved to fight Appellant's appeal was included in the $717K. Unfortunately, there won't be

$717K left in the estate for creditors, there will only be $365K left for creditors after all priority administrative expenses are paid.

Remarkably, the Chapter 7 Trustee made the felonious statement to the Bankruptcy Court that the $717K remaining in the estate were "unencumbered funds" (AA: pg. 34 pp. 14); however, the Chapter 7 Trustee knew that more legal fees were pending and the Chapter 7 Trustee knew that $250K of the $717K was reserved as administrative expenses to fight Appellant's first appeal (AA: pg.72-78). The Chapter 7 Trustee knew that half of the $717K was absolutely encumbered. Nonetheless, the Bankruptcy Court ruled that the difference between the $717K remaining in the estate was materially insignificant to the $750K promised to creditors by counsel (AA: pg.8).

In a completely different accounting prepared by the Chapter 7 Trustee while Appellant's Motion to Vacate was pending, the Chapter 7 Trustee disclosed to Appellant that only $365K would be left in the estate after all administrative fees were paid (AA: pg.72-78).    However, the Bankruptcy Court ruled on Appellant's Motion to Vacate before Appellant could present the conflicting accountings to the Court.   Nevertheless, Appellant made the discrepancies in the Chapter 7 Trustee's accounting known to the Bankruptcy Court.  Appellant filed a Motion to Reconsider (AA: pg.66), which is also under appeal, which points out the conflicting accounting submitted by the Chapter 7 Trustee (AA: pg.67-68).  On the same day that Appellant filed his Motion to Reconsider, the Chapter 7 Trustee filed a Motion to Correct a $10K error in accounting in his Opposition to Appellant's Motion to Vacate (AA: pg. 79)  In response to Appellant's Motion to Reconsider, and in response to the Chapter 7 Trustee's Motion for Correction, the Bankruptcy Court  ruled a second time that the discrepancy in accounting and missing dividend is immaterial toward fraud because attorneys are creditors too (AA: pg.6, pg. 8).

6

The Bankruptcy Court abused its discretion by failing to ascertain the true status of the estate's finances and by ruling that the missing dividend is not material.

### Post-Petition Attorneys are Not Creditors

The Bankruptcy Court committed judicial error by declaring that counsel are creditors too. Bankruptcy Code section 101(10) defines "creditor" as an : "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d) ..." However, Bankruptcy Code section 348(d) specifically prohibits post-petition attorney fees from being relegated to a pre-petition status, because allowing post-petition fees to become pre-petition debts would redefine attorneys for the estate as creditors. Attorneys for the estate in this case were administrative claimants, not creditors. The Bankruptcy Code intends to keep the definition of creditors and the definition of administrative claimants in separate classes.

Appellant's Motion to Vacate alleged that counsels' post-petition fees depleted the estate. Counsel might be considered to be creditors to the estate if they were owed unpaid pre-petition fees; however, neither of counsels' employment disclosures revealed any pre-petition fees owed to counsel by the estate. Additionally, Appellant complained that $460K of administrative expenses depleted the estate, none of which went to pay creditors. The Bankruptcy Court committed judicial err by ruling that the $750K dividend was depleted by creditors.

Case law and the Bankruptcy Code are replete with the distinction between administrative claimants and creditors. Section 1122 of the Bankruptcy Code prohibits dissimilar claims from being lumped into the same class. After the sale there were only unsecured creditors remaining as a creditor class. Counsel has no similarity with this group and does not belong in the creditor

7

class. Counsels' claims were guaranteed priority payment, while unsecured creditors may not be paid at all. Counsel belong in the administrative claimants class, not in the creditor class.

Additionally, if post-petition attorneys for the estate automatically become creditors, then these attorneys are no longer disinterested persons and they may have conflicts of interest between themselves and other creditors. Counsel were hired to represent the estate as provided by 11 USC 327 and 11 USC 1103. These code sections require attorneys for the estate to remain disinterested persons. Counsel submitted employment applications claiming to be disinterested persons and neither counsel revealed any creditor status in those disclosures. Bankruptcy Code section 101 (14)defines "disinterested person" as "not a creditor", and "does not have an interest materially adverse to the interest of the estate or of any class of creditors". Attorneys for the estate who compete with and litigate against creditors over dwindling estate funds are in conflict with those creditors. Bankruptcy Code section 328 (c) provides that attorneys for the estate who become disinterested persons during their representation of the estate may have to forfeit their fees. If attorneys for the estate automatically become creditors, they risk losing their disinterested status and may not represent the estate. The Bankruptcy Code is clear that attorneys for the estate are not intended to be considered as creditors. Regarding attorneys for the estate as creditors based on their post-petition employment puts too many Bankruptcy Code sections in conflict.

The Bankruptcy Code guarantees priority payment of attorneys over creditors to insure that the estate can obtain and pay for legal representation. The Bankruptcy Code insures that attorneys for the estate are not cast into the same class as creditors so that attorneys do not have

8

to compete with creditors for payment; thus minimizing conflicts of interest (see decenting opinion in Bethea v. Robert J. Adams & Assocs., 352 F.3d 1125, 1127 (7th Cir. 2003)). Attorneys are not creditors of an estate until they go unpaid; and the attorneys for the estate in this case were not threatened by nonpayment.

Interestingly, the Debtor added counsel to the post-petition creditors schedules. Even more interesting is that the Debtor lists counsels' claims as unknown. To the contrary, it is absolutely known that nothing is owed counsel. They have a post-petition claim of zero. Counsel have been paid for every fee application.

The Bankruptcy Court committed judicial err and abuse of discretion by regarding post-petition attorneys for the estate in this case as creditors; however, it must be pointed out that it is the Bankruptcy Court and not counsel that proffers this theory.

### Counsel Does Not Refute They Realized Their Fees Would Deplete the Estate

Fraud is a crime of intent. In order to prove fraud, Appellant must show that counsel had prior knowledge that administrative fees would consume most of the $750K counsel said would be available to creditors. Appellant's Motion to Vactate shows that at the time counsel promised the $750K dividend, counsel knew that existing administrative fees, payable by cash on hand (not paid by retainer), were $350K, and counsel had a reasonable idea that total administrative expenses paid out of the estate would exceed $450K (AA: pg. 19). Neither counsel refutes that when they told the Bankruptcy Court that $750K was available for creditors, counsel also knew that $350K in existing administrative fees would immediately deplete the $750K dividend that

9

counsel promised to creditors.        Counsel knew that the $750K dividend would be depleted

in half by their own administrative fees and expenses.

## Counsel Concealed Facts Pertinent to Appellant's Objection to the Sale By Failing to Reveal Counsels' Fees

Concealment of issues vital to a party's claim or defense is fraud.  A fraud on the Court

"occurs when it can be demonstrated, clearly and convincingly, that a party has sentiently set in

motion some unconscionable scheme calculated to interfere with the judicial system's ability

impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the

presentation of the opposing party's claim or defense", (emphasis mine, see  Aoude v. Mobil Oil

Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).  Appellant had a standing objection to the sale and

would have objected further to such a small dividend if counsel would have disclosed the true size

of the dividend; and then Appellant would have vigorously appealed the issue on equitable

grounds.

In order to approve the Sale Order, the Bankruptcy Court had to resolve all the objections

to the sale, either by settlement or by court ruling.  Tantamount to approving the Sale Order was

a determination by the Bankruptcy Court that unsecured creditors have been dealt an equitable

consideration.  To this end, the Bankruptcy Court asked counsel what the benefit to the estate

would be from the sale (AA: pg. 15-17).  Since, at the time, counsel knew their fees would

consume half of the funds they promised to creditors, counsel should have disclosed the

magnitude of their own fees when the court asked about the health of the estate.  Instead of

revealing their fees, counsel concealed their fees in fear the Bankruptcy Court would not approve

the Sale Order.  Counsel concealed their fees in an attempt to conceal a valid objection to the sale.

10

**It is Inequitable for the Bankruptcy Court to Consider the Missing Dividend as Immaterial**

In addition to alleging fraud, Appellant asked the Bankruptcy Court to set aside the Sale Order because a contractual condition of the Sale Order was breached. Appellant contends that the $750K promised to unsecured creditors was just as much a condition of the sale as was any other provision in the Sale Order (AA: pg. 17-18). Counsel indicated that the $750K dividend replaced the contractually stipulated $250K carve-out agreement. Be it fraud, or be it breach of contract, the $750K dividend is missing. However, the Bankruptcy Court has reasoned that no amount of missing dividend is material. This rationale violates the equitable standard which the Bankruptcy Court must apply in order to protect the rights and interests of all parties harmed by the bankruptcy. In effect, by saying that no amount of missing dividend is material the Bankruptcy Court ruled that all of the money remaining in the estate can go to the estate's attorneys, even though unsecured creditors were promised a dividend. This is simply inequitable. It is inequitable to sell a $10 mil. asset to an insider for $2.85 mil., paying the single secured creditor $1.86 mil. (representing an 88% recovery), then setting aside $250K to indemnify the buyer's perjury, while administrative fees approach $1 mil., and unsecured creditors receive less than a 5% dividend on $7 mil. of debt. It is inequitible to spend $1 mil. in administrative expenses to sell the estate's only assets for $2.85 mil, while decimating the unsecured creditors.

Counsel promised that unsecured creditors would receive a "substantial" dividend. The Bankruptcy Court's denial of fraud charges negates this promise and violates equitable and contractual conditions of the sale. The remaining $365K dividend is neither substantial nor equitable. A $750K dividend represents a 10% recovery for unsecured creditors; however, this

11

size dividend would not be substantial. On the other hand, a $2 mil. dividend for unsecured creditors would be both substantial and equitable.

## Harold Bowers' Affadavit Reveals Price Fixing

Harold Bowers, who is the largest creditor to the estate, filed an affadavit in response to Appellant's Motion to Vacate (AA: pg.49). Mr. Bowers' affadavit includes an email communication from his attorney, Fred Meeker, which in turn discloses that days before the auction both buyers threatened they would not bid at the auction unless Mr. Bowers released the buyers from liability, even though both buyers signed asset purchase agreements containing no such requirement for a release (AA:pg.65). Additionally, counsel negotiated amended bidding procedures in this Court just days before the auction which committed both buyers to bid at the auction (1st District case no.03-40229, docket # 7) . Mr. Bowers did not release the buyers, and as threatened, neither buyer bid at the auction. At the auction, Kubotek withdrew from the auction after failing to secure a good faith finding due to its perjury on the witness stand (October 27, 2003 Sale Hearing Transcript, pg 48, docket #245). Then the other bidder, IMSI, who was the stalking horse, refused to accept the assets or close the sale after winning the bidding by default, acting in breach of its purchase agreement (October 27, 2003 Sale Hearing Transcript, pg. 68, docket #245). Ten days later, after extensive negotiations with counsel, Kubotek, agreed to take the assets and close the sale for its initial offer of $2.85 mil. The auction was anything but competitive, fair, or uncompromised.

To show collunsion involving price fixing, one only has to ask Kubotek, "Did you know IMSI was not going to bid?" In fact, Kubotek's attorney did ask Kubotek's representitive, Naotake Kakishita, if Kubotek knew it was illegal to collude with another bidder to fix the price

of the assets (October 27, 2003 Sale Hearing Transcript, pg. 41, ln. 6, docket #245).    Mr.

Kakishita's response to this question is contrived, "It is common sense", Mr. Kakishita said. Just

minutes after his testimony on price fixing, Naotake Kakishita was found by the Bankruptcy Court

to have committed perjury on the witness stand for not truthfully answering questions about

Kubotek's meetings with the Debtor prior to the auction.  In this light, it is unreasonable to believe

that Mr. Kakishita knows what "common sense" means in a culture and legal system foreign to

him.  Mr. Kakishita certainlly didn't know it was common sense not to lie to a Federal Bankruptcy

Judge.  In any event, Kubotek's testimony regarding price fixing is impeachable due to Kubotek's

perjury committed during the same testimony.  We are left with no evidence that Kubotek did not

collude with the other buyer to fix the price of the assets.

Appellant raised this allegation of price fixing in his Motion to Reconsider, however it

received no comment by the Bankruptcy Court.  Appellant believes this Court should refer this

case to the US Attorney for investigation.  The email from Mr. Bowers' attorney indicates

collusion between the bidders, and the unusual circumstance whereby the stalking horse refused to

accept the assets after winning the bidding by default, and the winning bidder's perjury make this

case ripe with evidence suggesting price fixing.

At the very least, the threat by both bidders not to bid at the auction shows they were both

"chilled" by the Bowers litigation, and the auction was spoiled; a conclusion denied by the

Bankruptcy Court in its finding of facts reached at the end of the sale hearing.  The auction did

not result in a fair method to establish the value of the Debtor's assets.

13

### Denial of Due Process

The Bankruptcy Court expedited its ruling on Appellant's Motion to Vacate, citing First District precedent requiring swift determination of Bankruptcy Court motions concerning cases already under appeal (see Commonwealth of Puetro Rico v SS Zoe Conocotroni, 601 F.2d 39 (1st Cir. 1979)). This policy denied Appellant a hearing which in turn denied Appellant any opportunity to conduct discovery, subpoena witnesses, or rebutt the opposition. This District Court policy to expedite 60(b) motions in cases already under appeal denied Appellant due process to fully vet his fraud and price fixing allegations.

### Courts Should Use the "Colorable Claim" Standard to Determine Fraud

Appellant contends that the Bankruptcy Court used the "smoking gun" standard to evaluate Appellant's allegation of fraud. However, the Bankruptcy Court should have used the "colorable claim" standard to determine if Appellant's allegation of fraud should go forward to a hearing (see Pearson v. First NH Mortgage Corp., No. 98-2207 (1st Cir. 1999)).

The "colorable claim" standard states that Appellant's allegation of fraud should go forward to a hearing if Appellant cites facts which "seem" to indicate there was fraud. Appellant asserts that given the conflicting accounting submitted by the Chapter 7 Trustee, which Appellant presented to the Bankruptcy Court, it was reasonable (and accurate) to conclude that only $365K would be available to unsecured creditors, and not the $717K indicated by the Chapter 7 Trustee. It was reasonable to conclude that counsel meant unsecured creditors would receive the $750K dividend. It was reasonable to conclude that counsel concealed their own fees in order to encourage the Bankruptcy Court to approve the Sale Order. It was reasonable to conclude that counsel always knew their own fees would consume most of the $750K dividend they promised

14

to unsecured creditors. It was reasonable to conclude that counsel intentionally and knowingly misrepresented that a substantial dividend would be paid to unsecured creditors in order to keep Appellant from objecting to a smaller dividend on equitable grounds. It is reasonable to conclude that all these facts constitute fraud on the Court and fraud on Appellant.

## REMEDY

New evidence arose out of Appellant's allegation of fraud indicating that the winning buyer engaged in price fixing. At the very least, it is now certain that both buyers were chilled by the Bowers litigation, and the auction was spoiled and did not produce a fair price for the estate's assets. The Debtor has engaged in a long list of fraudulent acts in order to discharge its debts. The Debtor was judicially estopped from pleading insolvency in the Bankruptcy Court after claiming solvency in this Court during the Bowers litigation. The Debtor artifically surpressed its revenue to appear insolvent. Immediately after Kubotek took possession of the assets, Kubotek broke the Debtor's previous sales records. Appellant predicted this "avalanche" in sales throughout the bankruptcy. The Debtor was not insolvent and recovery was immanent. The buyer committed perjury and engaged in price fixing and complains of being punished for the fraud of counsel if the Court vacates the Sale Order. However, the buyer is the beneficiary of the fraud and not its victim.

Appellant asks this Court to set aside the Sale Order due to counsels' fraud on the Court and fraud on Appellant. Appellant asks this Court to remand this case to the Bankruptcy Court with instructions to convert this case back to a Chapter 11 case; instructing the buyer to return the assets to the Debtor, thus promoting the buyer to the status of an unsecured creditor with a $2.85 mil. claim. Appellant asks this Court to instruct the Debtor's counsel and the Unsecured

15

Creditors Committee counsel to disgorge all fees and retainer paid in conjunction with this case.

Appellant also asks this Court for whatever other relief this Court may deem appropriate.


Respectfully submitted on this 9th day of November, 2004, by


Robert White - Pro Se

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

04-40208 NMG

---

WHITE - Pro Se

Appellant

v.

CHAPTER 7 TRUSTEE

Appellee

---

On Appeal form the United States Bankruptcy Court
Western District of Massachusetts

---

CERTIFICATE OF SERVICE
for
APPELLANT'S OPENING BRIEF

---

I, Robert White, hereby certify that on this 10th day of November, 2004, I served a copy of APPELLANT'S OPENING BRIEF by mailing the same, postage prepaid to the following:

## SERVICE LIST

Michael J. Goldberg, Esq.
Attorney for the Chapter 7 Trustee
Sherin and Lodgen  LLP
101 Federal Street
Boston, MA  02110

James Wilton, Esq.
Attorney for the Debtor
Ropes and Gray, LLP
One International Place
Boston, MA  02110

John Loughnane, Esq.
Attorney for the Buyer
Gadsby Hanna LLP
225 Franklin Street
Boston, MA  02110

November 10, 2004

Robert White - Pro Se
Box 488,
Boise City, OK 73933
Voice: (580) 544-4210