UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04-40208-NMG

---

WHITE

Appellant

v.

CHAPTER 7 TRUSTEE

Appellee

---

ON APPEAL FROM AN ORDER OF
THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

---

**BRIEF OF APPELLEE**

---

Michael J. Goldberg           *Attorneys for*
   BBO No. 551869            *Appellee*
John C. La Liberte
   BBO No. 556046
Anthony L. DeProspo, Jr.
   BBO No. 644668

SHERIN AND LODGEN LLP         November 29, 2004
101 Federal Street
Boston, MA  02110
(617) 646-2000

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

Jurisdiction ........................................................................................................................ 1

Issue Presented ................................................................................................................. 1

Standard of Review .......................................................................................................... 1

Statement of the Case ...................................................................................................... 1

Statement of Facts ............................................................................................................ 3

    The Debtor's Bankruptcy ..................................................................................... 3

    Bower's Objection to the Sale to IMSI ................................................................ 3

    The White Objection ............................................................................................. 4

    The Auction ........................................................................................................... 4

    The First White Appeal ........................................................................................ 5

    Estate Counsel ....................................................................................................... 6

    The Second White Appeal ................................................................................... 6

Argument .......................................................................................................................... 8

    The Bankruptcy Court Did Not Err In Finding That
    Estate Counsel Did Not Commit Fraud On The Court .................................... 8

    A. Estate Counsel Did Not Commit Fraud On the Court ................................ 9

    B. White's Repeated And Frivolous Litigation Against
       The Estate Has Significantly Depleted Estate Assets .............................. 11

    C. White's Remaining Allegations are Equally Meritless ............................. 13

Conclusion ...................................................................................................................... 13

-ii-

# TABLE OF AUTHORITIES

## Cases

Aoude v. Mobil Oil Corp.,
892 F.2d 1115 (1st Cir. 1989)...................................................................................................9

BankBoston, N.A. v. Nanton,
239 B.R. 419 (D. Mass. 1999).....................................................................................................1

In re Boston Reg'l Med. Ctr., Inc.,
2004 WL 1778881 (D. Mass. Aug. 9, 2004) ...............................................................................9

In re Indian Motorcycle Mfr. Co., Inc.,
288 B.R. 617 (D. Mass. 2003).....................................................................................................1

In re Malmart Mortgage Co., Inc.,
166 B.R. 499 (D. Mass. 1994)...................................................................................................12

In re Weinstein,
217 B.R. 5 (D. Mass. 1998).......................................................................................................13

Kupferman v. Consol. Research & Mfr. Corp.,
459 F.2d 1072 (2d Cir. 1972) .....................................................................................................9

Piantes v. Pepperidge Farms, Inc.,
875 F. Supp. 929 (D. Mass. 1995).............................................................................................11

Rutanen v. Baylis,
275 B.R. 145 (D. Mass. 2002).....................................................................................................1

Tri-Cran, Inc.,
98 B.R. 609 (Bankr. D. Mass. 1989) ..........................................................................................9

## Rules

Fed. R. Bankr. P. 8010(A)(2) ........................................................................................................1

## Jurisdiction

Pursuant to Fed. R. Bankr. P. 8010(a)(2), and for the limited purpose of this appeal, Appellee adopts Appellant's statement of the basis for jurisdiction.

## Issue Presented

Appellant contends that the Bankruptcy Court abused its discretion by failing to find that the Debtor's counsel and/or counsel to the Official Unsecured Creditor's Committee (collectively, "Estate Counsel") committed fraud on the Court. The remaining issues raised by Appellant in his "Issues on Appeal" merely set forth in greater detail the bases for his appeal.

## Standard of Review

"The Court will review the Bankruptcy Court's findings of fact under a clearly erroneous standard." In re Indian Motorcycle Mfr. Co., Inc., 288 B.R. 617, 631 (D. Mass. 2003). "Reviewing courts apply a clearly erroneous standard because, as trier of fact, the Bankruptcy Court is 'on the front line' and in the best position to judge the credibility of the witnesses and the evidence." Rutanen v. Baylis, 275 B.R. 145, 152 (D. Mass. 2002) (Gorton, D.J.) (internal citation omitted). Even where the issue poses a mixed question of law and fact, the Court applies the clearly erroneous standard unless the bankruptcy court's analysis was infected by legal error. See BankBoston, N.A. v. Nanton, 239 B.R. 419, 422 (D. Mass. 1999).

## Statement of the Case

On August 22, 2003, CK Liquidation Corporation f/k/a Cadkey Corporation (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On August 29, 2003, the Debtor moved the United States Bankruptcy Court for the District of Massachusetts (Western Division) for an order approving the sale of substantially all of the Debtor's assets (the "Sale Motion"). On or about October 9, 2003, Robert White ("White" or

"Appellant"), an unsecured creditor, filed an objection to the sale (the "White Objection") on the basis that unsettled litigation against the Debtor's estate (the "Bowers Litigation") would adversely effect the sale price.

On November 6, 2003, the Court (Boroff, J.) entered an order overruling the White Objection and approving the sale of the Debtor's assets to Kubotek Corporation (the "Sale Order"). White appealed the Order, claiming that the Bankruptcy Court abused its discretion by going forward with the Sale despite the existence of the Bowers Litigation (the "First White Appeal"). This Court (Gorton, D.J.) dismissed the First White Appeal on November 4, 2004.

On or about August 12, 2004, White filed a Motion to Vacate the Sale Order Based on Fraud on the Court. White claimed that Estate Counsel intentionally misrepresented the amount of funds available for distribution to unsecured creditors in order to have the Sale Motion allowed. The Court denied White's motion on September 8, 2004. White moved for reconsideration, which the Court also denied.

White subsequently filed this appeal (the "Second White Appeal"). White claims that the Court erred in failing to find that Estate Counsel committed fraud on the Court, and that Estate Counsel's alleged misrepresentations were made to increase their professional fees. White now also claims, *inter alia*, that the Court denied him due process rights and that the buyer engaged in "price fixing" with respect to the Sale. White's inappropriate and unfounded allegations should be summarily rejected by this Court. Accordingly, the Orders of the Bankruptcy Court should be affirmed.[1]

---

[1] The Second White Appeal involves three orders of the Bankruptcy Court: 1) the Court's denial of White's Motion to Vacate the Sale Based on Fraud on the Court; 2) the Court's denial of White's Motion to Reconsider its denial of White's Motion to Vacate; and 3) the Court's approval of the Chapter 7 Trustee's Correction to his Opposition to Vacate Sale Order.

## Statement of Facts

The Debtor was a software company based in Marlborough, Massachusetts and engaged in the development, manufacture, and distribution of PC-based, mechanical engineering computer-aided design (CAD) software systems used by designers and manufacturers worldwide. See Trustee's Appendix ("TA") at 12.[2] On June 7, 2000, the Debtor was found liable for patent and copyright infringement and breach of contract on claims brought by Harold L. Bowers (the "Bowers Litigation," as defined above). Id. Bowers subsequently obtained an injunction prohibiting the Debtor from infringing upon Bowers's intellectual property (the "Injunction"). TA 12-13.

### The Debtor's Bankruptcy

On August 8, 2003, Bowers sought a writ of execution to satisfy the litigation judgment debt of approximately $5.9 million. TA 13. On August 22, 2003, the Debtor filed its voluntary petition for relief under Title 11 of the United States Code. Id. That same day, the Debtor signed an asset purchase agreement with International Microcomputer Software, Inc. ("IMSI"). TA 58. The parties set the purchase price at $2.5 million (in excess of the Debtor's secured debt), subject to Bankruptcy Court approval. TA 39-55.

### Bowers's Objection to the Sale to IMSI

Bowers subsequently advised the Debtor of his intent to object to the proposed sale to IMSI, claiming that certain of the Debtor's products infringed on Bowers's intellectual property rights. TA 257-258. On August 29, 2003, the Debtor filed a motion seeking Bankruptcy Court approval of the sale to IMSI, subject to higher and better offers (the "Sale Motion," as defined above). TA 58. The Sale Motion also sought approval of the procedures to be utilized by the

---

[2] Appellant failed to assemble a complete record appendix; indeed, Appellant failed to include *any* of Appellee's designations. Appellant's appendix is hereinafter referred to as "AA." For the convenience of the Court, Appellee has assembled its own record appendix ("TA") which it respectfully submits herewith.

Debtor in soliciting alternative offers (the "Auction Procedures"). TA 40-42. The Debtor subsequently sought to amend the Sale Motion to allow the Debtor to sell its assets free and clear of any alleged interests Bowers had in the Debtor's intellectual property. TA 277.

The Court entered an order approving the Auction Procedures, and scheduled a hearing to consider the proposed Sale Order on October 27, 2003. TA 824-839. On September 26, 2003, Bowers filed an objection to the proposed sale (the "Bowers Objection"). TA 543-557.

### The White Objection

On October 9, 2003, Robert White also filed an objection to the proposed sale (the "White Objection," as defined above). TA 901-904. White is an unsecured creditor of the Debtor; indeed, at the time he filed his Objection, White served on the Official Committee of Unsecured Creditors (the "Committee"). AA 28. In his Objection, White claimed that the Bowers Litigation cast a shadow over the Debtor's ability to properly market the Debtor's assets and that more time was needed to resolve the Bowers Litigation before proceeding. TA 903.

### The Auction

Bowers, the Debtor and the Committee ultimately reached an agreement regarding certain auction procedures to take place at the hearing in Bankruptcy Court on October 27, 2003. TA 1178-1180. Bowers, however, did not agree to waive his Objection and the White Objection also remained pending. Id. As agreed, the auction commenced on October 27, 2003. TA 1187. IMSI's $2.5 million offer in the IMSI Purchase Agreement stood as the first bid. TA 1188. Kubotek Corporation ("Kubotek"), a Japanese firm, bid $2.85 million and won the auction. TA 1193. Kubotek advised the Court that it did not intend to negotiate with Bowers, but rather, conditioned its bid on a finding that the purchase did not violate the Injunction. Id.

On October 30, 2003, the parties reported the following: the Debtor had resolved the Bowers Objection and Kubotek agreed to provide $3.6 million in total compensation for the Debtor's assets, $750,000 of which would be paid to Bowers (and in fact, was paid) in consideration for a release of potential infringement claims against the Debtor's estate. TA 1253-1255. Kubotek also agreed to close the Sale notwithstanding White's refusal to withdraw his Objection. TA 1459.

### The First White Appeal

Having resolved the major obstacles to consummating the Sale, the parties addressed the White Objection at a hearing held on November 6, 2003. TA 1461. The crux of White's objection was that the Debtor's assets had not been marketed sufficiently and that the Bowers Litigation had discouraged potential bidders. Id. At the hearing, and in response to an inquiry of the Court respecting the adequacy of the Debtor's funds to bear the cost of the White Appeal and still provide for creditors, Estate Counsel estimated that there would be approximately $750,000 in funds available for creditors after consummation of the Sale. TA 1462-63. White did not object to the Sale on the basis of any alleged promises made at the November 6, 2003 hearing regarding dividends to unsecured creditors. TA 1455-1502.

The Court overruled the White Objection, holding that the White Objection suffered "from a complete failure of evidence and proof." TA 1495-1496. White appealed the Court's order in the United States District Court, claiming that the Bankruptcy Court abused its discretion by going forward with the Sale despite the existence of the Bowers Litigation (the "First White Appeal," as defined above). AA 108, Docket #126. This Court (Gorton, D.J.) dismissed the First White Appeal on November 4, 2004.

### Estate Counsel

On September 9, 2003, this Court granted the Debtor's application authorizing Ropes & Gray LLP ("Ropes & Gray") to serve as the Debtor's counsel. See AA 108, Docket #45. On September 30, 2003, the Court approved the appointment of Sherin and Lodgen LLP ("Sherin and Lodgen") to serve as counsel for the Committee. See AA 108, Docket #83. On February 2, 2004, the Debtor filed a Motion for Conversion of the Case from Chapter 11 to Chapter 7, which was granted on March 4, 2004 (the "Conversion Date"). See AA 108, Docket #239, 256. On or about March 5, 2004, the United States Trustee appointed John A. Burdick to serve as Chapter 7 Trustee of the Debtor (the "Trustee"). See AA 108, Docket #261. On August 17, 2004, over White's objection, the Court allowed the Trustee's application to employ Sherin and Lodgen as his special counsel to represent him in litigation and appellate matters involving White. See AA 108, Docket #267, 272, 304, 318.

On January 27, 2004, the Court allowed Sherin and Lodgen's first interim fee application in the amount of $93,350.58; Sherin and Lodgen's final application for its work for the Committee, totaling $111,085.49 (inclusive of the fees and expenses allowed its interim fee application), was filed on October 21, 2004. See AA 108, Docket #237, 354. On September 7, 2004, the Court allowed Ropes & Gray's final application for reimbursement of costs and fees in the amount of $463,141.59. See AA 108, Docket #336. White has not objected to any of Estate Counsel's applications for fees.

### The Second White Appeal

On or about August 13, 2004, White filed a Motion to Vacate the Sale Order on the basis that Estate Counsel allegedly committed fraud on the Court in endorsing the Sale Motion. AA 14-24. White claimed that at the November 6, 2003 hearing, Estate Counsel misrepresented the

-6-

amount of Estate funds that would be available for distribution to unsecured creditors and failed to disclose the extent of their professional fees – all in an effort to obtain the Court's approval of the Sale and incur additional legal fees. AA 18-22. On September 8, 2004, the Court denied White's Motion to Vacate, finding White's motion to be "wholly without merit":

> In light of statements made at the sale hearing with respect to the estimated proceeds to the estate, the difference between the amount now held by the trustee and the projection at the sale hearing is not material. Furthermore, even if there were a material difference, no representation was made to the Court with respect to a dividend to <u>unsecured creditors</u>.

AA 3-4 (emphasis in original).

White moved for reconsideration on September 10, 2004. AA 67-70. In addition to White's previous allegations, White also claimed that the Sale should be vacated on the basis that Estate Counsel committed fraud on Bowers and White as individuals, that the $750,000 *promised* to unsecured creditors was "missing," that Estate Counsel's alleged misrepresentations constituted a breach of the Sale Order, and that Kubotek participated in a "price fixing" scheme which allegedly chilled the auction. Id.

Also on September 10, 2004, the Trustee filed a Correction to the Opposition to his Motion to Vacate the Sale Order to correct an error in the amount of fees that Sherin and Lodgen, as counsel to the Committee, had incurred in connection with the Chapter 11 case. AA 80-81. In his original Opposition, the Trustee had estimated those fees to aggregate approximately $5,000. AA 80. The Correction stated that the Opposition had underestimated Sherin and Lodgen's fees by approximately $15,000. Id.

The Court denied White's motion for reconsideration on September 13, 2004. AA 6. As for the Trustee's Correction, on September 13, 2004 the Court noted as follows:

> The Trustee's Opposition is deemed amended accordingly. However, inasmuch as the bases for the Court's Order of September 8, 2004 have not materially changed, the order will not be vacated.

AA 8.

On September 13, 2004, White filed a notice of appeal of the following orders: 1) the Court's denial of White's Motion to Vacate the Sale Based on Fraud on the Court; 2) the Court's denial of White's Motion to Reconsider its Denial of White's Motion to Vacate; and 3) the Court's Approval of the Chapter 7 Trustee's Correction to his Opposition to Vacate Sale Order (collectively, the "Second White Appeal," as defined above).  AA 12.

## Argument

### The Bankruptcy Court Did Not Err In Finding That Estate Counsel Did Not Commit Fraud On The Court

The Second White Appeal represents the latest in a series of unwarranted attacks against Estate Counsel, and is clearly intended to harass the parties and delay the administration of the Debtor's Chapter 7 case.  At the November 6, 2003 hearing, Estate Counsel provided their best estimates as to the amount of funds available for distribution to creditors.  In their statements to the Court, Estate Counsel made no guarantees to White regarding the extent of Estate Counsel's professional fees to be incurred or the extent of White's projected distribution.  White did not initially object to the Sale Motion on the basis that his anticipated dividend would be less than "promised," and White has never objected to any of Estate Counsel's fee applications.  Rather, White's fraud allegations come almost a year after consummation of the Sale Order and only after the Estate has been forced to expend significant resources defending frivolous litigation brought by both White and Bowers.

Estate Counsel does not deny that the current balance of estate funds is less than that estimated on November 6, 2003 – although, as found by the Bankruptcy Court, the difference is

not material.[3] If White is dissatisfied with his anticipated dividend, however, he need look no further than his own conduct in depleting Estate assets with unnecessary and frivolous litigation. White cannot identify any misstatements allegedly made by Estate Counsel in the Bankruptcy Court which give rise to a colorable fraud claim. For all these reasons, the Orders of the Bankruptcy Court should be affirmed and the Second White Appeal should be dismissed.

### A.     Estate Counsel Did Not Commit Fraud On The Court.

"A 'fraud on the court' occurs where it can be demonstrated, ***clearly and convincingly***, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." In re Boston Reg'l Med. Ctr., Inc., 2004 WL 1778881 (D. Mass. Aug. 9, 2004) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)) (emphasis added). As noted by the Second Circuit Court of Appeals:

> The concept should embrace only that species of fraud which does or attempts to defile the Court itself, or is a fraud perpetrated by officers of the Court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

Kupferman v. Consol. Research & Mfr. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972) (quoted in In re Tri-Cran, Inc., 98 B.R. 609, 616 (Bankr. D. Mass. 1989)). Judge Boroff, who evaluated in person the very statements White now complains of, found White's subsequent fraud allegations to be "wholly without merit." AA 3-4. White cannot show that Judge Boroff's decision was clearly erroneous. Accordingly, the Orders of the Bankruptcy Court should stand.

---

[3]     One reason why White may have concluded differently is that he continually deducts $250,000 from the aggregate amount of Estate assets, an amount that Kubotek required be set aside to fund the cost of litigation with White, and in the event that White prevailed in his appeal, to fund any resulting settlement with him. AA 68. Much less than $250,000 has been spent to date on litigation with White, and whatever remains after that litigation is concluded will be made available to creditors.

White's Appeal fails to demonstrate by any evidentiary standard, much less by "clear and convincing" evidence, that Estate Counsel perpetrated a fraud on the Court. At the November 6, 2003 hearing, Estate Counsel attempted to estimate for the Court the proceeds that would be available to the Estate for distribution to administrative, priority and unsecured creditors should the proposed sale of the Debtor's assets be consummated. TA 1463-1464. The statements were made in response to concerns, expressed by the Court, that the possible cost of litigating the First White Appeal could consume any funds available to the Estate from the proceeds of the proposed Sale. TA 1462-1463. Estate Counsel addressed the Court's concerns by providing an estimate, derived quickly during the hearing and based on information available at the time, that enabled the Court to compare the likely costs of the First White Appeal to the amount of funds available to the Estate. TA 1463-1464.

White's contention in his motion for reconsideration that there will be "only" $365,000 available for unsecured creditors is completely unfounded. AA 67. In an obvious effort to provide the Court with an inaccurate accounting of Estate funds, White conveniently fails to include the $250,000 set aside for White's appeals. White also fails to disclose that only a small portion of those funds have been consumed (although White is doing his best to deplete those funds) and that the Trustee has not yet recovered preferential payments which could potentially increase significantly the amount of funds available for distribution. White's motion for reconsideration comes 10 months after the November 6, 2003 hearing, and <u>after</u> the Estate was forced to expend resources on litigation and other matters. As the Bankruptcy Court found, White's allegations provide no basis for a finding that Estate Counsel misrepresented facts at the November 6, 2003 hearing.

It is clear from the Bankruptcy Court's decision that Estate Counsel did nothing more than attempt a good-faith estimate for the Court based on information provided to them by the Debtor. See Piantes v. Pepperidge Farms, Inc., 875 F. Supp. 929, 933 (D. Mass. 1995) (false statements concerning matters of opinion, expectations, conditions to exist in the future, or matters promissory in nature do not give rise to liability to fraud). As the Bankruptcy Court also found, at no time did Estate Counsel represent or guarantee a particular level of dividends to unsecured creditors. AA 3. No promises were made to White as to what his ultimate distribution would be. Id. Estate Counsel's fees have increased, significantly, due to the litigious conduct of White. Yet at the end of the day, funds available for distribution to creditors may be very close to Estate Counsel's original estimates. There is absolutely no "clear and convincing" evidence that Estate Counsel committed fraud on the Court. Accordingly, the Orders of the Bankruptcy Court should be affirmed.

> **B.    White's Repeated And Frivolous Litigation Against The Estate Has Significantly Depleted Estate Assets.**

White's aggressive litigation tactics have significantly altered Estate Counsel's original fee estimates. In the last year, the Estate has defended and/or opposed the following actions brought by White:

- White's Motion to Vacate the Sale Order;

- The First White Appeal;

- White's objection to the Chapter 7 Trustee's Motion to Retain Sherin and Lodgen LLP as Special Counsel;

- White's objection to the Chapter 7 Trustee's Supplement to his Motion to Retain Sherin and Lodgen LLP as Special Counsel;[4]

---

[4] The sole issue raised by the Trustee's Supplement was that the application to employ Sherin and Lodgen LLP should have retroactive effect. See AA 108, Docket #237. White responded by accusing Sherin and Lodgen attorneys of committing fraud on the Court. Id.

- White's Motion to Vacate the Sale Order based upon alleged fraud on the Court;

- White's Motion for Reconsideration of the Court's denial of the Motion to Vacate; and

- The Second White Appeal.

AA 14-24, 28-35, 67-78, 108, Docket #121, 126, 272, 304. White's arguments are repetitive, improper and meritless.[5] He nonetheless continues to engage in baseless motion and appellate practice, which is further depleting the funds of the Debtor's estate that would otherwise be distributed to its legitimate creditors.

Notably, White has never opposed Estate Counsel's fee applications. See AA 108, Docket #237, 354, 336. The Bankruptcy Court approved Sherin and Lodgen's interim fee application on January 27, 2004; on September 7, 2004, the Court allowed Ropes & Gray's final application for reimbursement of costs and fees. Id. White had a full and fair opportunity to object to Estate Counsel's fee requests and, specifically, to raise the issue of fraud on the Court at that time. Indeed, he could have raised the issue again when he objected to the Trustee's retention of Sherin and Lodgen as his special counsel. On each instance, he chose not to do so. "To permit [a] person who did not participate in proceedings of which they are on notice to complain of the result of such proceedings would cause unlimited confusion and even disrespect of the courts and their authority." In re Malmart Mortgage Co., Inc., 166 B.R. 499, 503 (D. Mass. 1994) (internal citation omitted).

---

[5] In addition, on October 12, 2004, White filed a Motion to Disgorge Estate Counsel's Fees. The Bankruptcy Court denied the motion on October 19, 2004 and ordered White to appear before the Court on November 16, 2004 "and show cause why he should not be sanctioned on account of the filing of this frivolous motion." On October 28, 2004, White filed a notice of appeal in the District Court with respect to the Court's denial of his Motion to Disgorge Fees. On November 16, 2004, the Bankruptcy Court sanctioned White in the amount of $2,500.00 pursuant to Fed. R. Bankr. P. 9011(c)(1)(b).

White has been fully involved in these proceedings, and, at various times, represented by his own counsel. He should not be permitted to waste further Estate resources by attacking Estate Counsel with baseless and defamatory allegations. The Second White Appeal, which seeks to overturn several prior rulings of the Bankruptcy Court, should be dismissed.

### C.  White's Remaining Allegations are Equally Meritless.

White's remaining contentions deserve no consideration from this Court. For example, White seeks to relitigate the propriety of the auction (the subject of the First White Appeal) by alleging that Kubotek engaged in "price fixing." See White Brief at 12-13. Objections to the conduct of the Auction and the Sale Hearing, previously decided by this Court, need not be considered again. See In re Weinstein, 217 B.R. 5, 8 (D. Mass. 1998). Furthermore, White raised several issues (e.g., denial of due process) for the first time in Appellant's Brief. See White Brief at 14. The Court should also decline to consider those arguments. Indeed, White's desperation in creating some colorable legal theory is never more evident than in his stated belief that this matter should be turned over to the US Attorney for "investigation." Id. at 13.

White is a disgruntled creditor who failed in his attempt to purchase the assets of the Debtor. Since then, he has sought to sabotage the Debtor's Chapter 11 (and now, Chapter 7) case by filling the Bankruptcy Court's docket with frivolous motion practice. White has docketed three separate appeals in the District Court. White's present appeal—yet another attempt to advance his personal agenda with baseless attacks on the Estate's professionals—is unfounded in fact and law and should be dismissed.

### Conclusion

For the reasons set forth above, Appellee respectfully requests that the Court affirm in their entirety the Bankruptcy Court's denial of White's Motion to Vacate the Sale Based on

Fraud on the Court, denial of White's Motion to Reconsider its denial of White's Motion to Vacate, and its approval of the Chapter 7 Trustee's Correction to his Opposition to Vacate Sale Order.

Dated: November 29, 2004

JOHN A. BURDICK,
CHAPTER 7 TRUSTEE,

By his counsel,

__/s/ Michael J. Goldberg_____
Michael J. Goldberg (BBO #551869)
Anthony L. DeProspo (BBO #644668)
SHERIN AND LODGEN LLP
101 Federal Street
Boston, MA  02110
(617) 646-2000

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

04-40208-NMG

---

WHITE

Appellant

v.

CHAPTER 7 TRUSTEE

Appellee

---

**CERTIFICATE OF SERVICE**

I certify that on this date I caused to be served on each of the persons on the attached Service List by facsimile and first class mail a true copy of the Brief of the Appellee.

/s/ Anthony L. DeProspo, Jr.
Anthony L. DeProspo, Jr., Esq.
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000

Dated: November 29, 2004

## SERVICE LIST

| | |
|---|---|
| CADKEY Corporation | James Wilton, Esq.<br>Ropes & Gray, LLP<br>One International Place<br>Boston, MA  02110 |
| Kubotek Corporation | John Loughnane, Esq.<br>Gadsby Hanna LLP<br>225 Franklin Street<br>Boston, MA  02110 |
| Harold L. Bowers | Frederic Meeker, Esq.<br>Banner & Witcoff, Ltd.<br>1001 G Street, NW  11th Floor<br>Washington, DC  20001-4597 |
| MCS | Livingston Davies, Esq.<br>Law Office of Livingston Davies<br>P.O. Box 367<br>Duxbury, MA  02331 |
| John A. Burdick, Jr.<br>Chapter 7 Trustee | John A. Burdick, Jr.<br>340 Main Street, Suite 800<br>Worcester, MA  01608 |
| United States Trustee | Office of United States Trustee<br>Attn: Richard King, Esq.<br>Franklin Square Tower<br>600 Main Street, Suite 200<br>Worcester, MA  01608 |
| Robert White | Robert White<br>P.O. Box 488<br>Boise City, OK  73933 |