**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **IN RE CK LIQUIDATION CORPORATION, f/k/a CADKEY CORPORATION,** | |
| **Debtor,** | |
| **ROBERT WHITE,** | |
| **Appellant,** | **Bankruptcy Appeal No. 04-40208-NMG** |
| **v.** | |
| **JOHN A. BURDICK, JR., Trustee,** | |
| **Appellee.** | |

**MEMORANDUM & ORDER**

**GORTON, J.**

In this protracted bankruptcy dispute relating to the liquidation of the assets of Cadkey Corporation ("the Debtor"), unsecured creditor Robert White ("White") now appeals several Bankruptcy Court rulings with respect to attorneys' fees paid from the bankrupt estate. The Bankruptcy Trustee, John A. Burdick, Jr. ("Trustee"), has filed an opposition.

## I. Factual Background

The Debtor is a software company based in Marlborough, Massachusetts. On August 22, 2003, it filed for bankruptcy and, on October 27, 2003, its assets were auctioned. Kubotek

Corporation ("Kubotek") bid $2.85 million and was the high bidder. White filed an objection to the sale on the ground that it had happened "too quickly" because the Debtor's assets had not been sufficiently marketed. That objection was overruled by the Bankruptcy Court and the decision was affirmed on appeal by this Court (Bankruptcy Appeal No. 03-40279-NMG).

Meanwhile, another dispute was brewing. On September 9, 2003, the Bankruptcy Court allowed the Debtor's application to retain the law firm of Ropes & Gray LLP as its counsel. Soon thereafter, the Court approved the appointment of Sherin and Lodgen LLP to serve as counsel for the Official Committee of Unsecured Creditors.

On November 6, 2003, a hearing was held to address the sale of Debtor's assets to Kubotek and White's objection thereto. Counsel for the Debtor, Attorney James M. Wilton ("Attorney Wilton"), and Counsel for the Official Committee of Unsecured Creditors, Attorney Michael J. Goldberg ("Attorney Goldberg"), informed the Bankruptcy Court that $250,000 from the estate would be set aside to defend any appeal by White of the denial of his objection. The Court demurred that the estate was going to carry the cost of the appeal and the following exchange ensued:

> THE COURT: What is the estate getting when it's all over, in addition to whatever avoidance recoveries might be out there?
>
> ATTORNEY WILTON: The purchase price for the estate is $2,850,000. Micro Control Systems, which is the only

secured lender, will be satisfied by a payment of $1,860,000. There is a reduction of that amount because there are amounts repayable to IMSI, which is the stalking horse bidder, of I believe $270,000 with a reduced purchase price. So the balance of that difference it retained by the estate.

THE COURT: So let's assume then that the $250,000 is consumed during the course of the appeal. What then is the expected net proceeds that are available for the estate?

ATTORNEY WILTON: I'd have to calculate that.

ATTORNEY GOLDBERG: Based on - we're all working on moving numbers back in the envelopes, but I believe that its approximately $750,000. In other words, if you take the proceeds minus the IMSI share, that's $990,000; add back the $25,000 that IMSI is contributing to the cost of litigation so now we're up at $1,015,000, we subtract the $270,000 that IMSI gets back, we're at approximately $750,000. And then we add back the cash, we sort of bounce back and forth, we add back the cash that's in the estate so we're back up to a million. Then the cost of appeal, which I - is the full two fifty, we're still netting $750,000 for distribution to creditors.

On January 27, 2004, the Bankruptcy Court allowed Sherin and Lodgen's first interim fee application in the amount of $93,350 (a final application for an additional fee of approximately $17,000 has since been filed). On September 7, 2004, the Bankruptcy Court allowed Ropes & Gray's final application for reimbursement of costs and fees in the amount of $463,141.[1]

Before the approval of Rope & Gray's application, White had moved to vacate the sale order on the basis of "fraud on the

---

[1]Although the fee seems excessive to this Court under the circumstances, the Bankruptcy Judge was in a better position to assess its reasonableness and, furthermore, the amount of fee is not at issue in this appeal.

court". He contended that, at the November 6, 2003 hearing, Attorneys Wilton and Goldberg had misrepresented the dividend that unsecured creditors would receive because legal fees had not been taken into account.[2] White calculates that, after legal fees are subtracted, unsecured creditors will, in fact, receive only $365,000.

On September 8, 2004, United States Bankruptcy Judge Henry J. Boroff denied White's motion in a written Order on the grounds that:

> [t]he Chapter 7 trustee reports in his opposition that he is indeed holding more than $717,000, and that he expects that additional pre-conversion professional fees requests will approximate $17,000. In light of statements made at the sale hearing with respect to the estimated proceeds to the estate, the difference between the amount now held by the trustee and the projection at the sale hearing is not material. Furthermore, even if there were a material difference, no representation was made to the Court with respect to the dividend to <u>unsecured creditors</u>. Administrative claimants are also creditors who are entitled to share in the proceeds held by the estate.

(emphasis in original).

Two days later, the Trustee filed a motion to supplement his opposition to White's motion to correct an error in the calculation of Sherin & Lodgen's fees, which had been underestimated by $15,000. That same day, White moved for reconsideration of the September 8, 2004 Order on the grounds

---

[2]White characterizes the statements of the debtor's counsel as being "felonious". Criminal accusations are unwarranted in civil proceedings and appellant is warned to choose his language more carefully in the future.

that, in addition to committing a fraud on the court, counsel had committed a fraud upon him and Harold Bowers, another unsecured creditor. The Trustee's motion was allowed and White's was denied, both by endorsement.

On October 15, 2004, White appealed the denials by the Bankruptcy Court of his motions to vacate and for reconsideration and the allowance of the Trustee's motion to correct. He argues that 1) Attorneys Wilton and Goldberg committed fraud on the court when they represented that $750,000 would be available for "creditors" because attorneys are not "creditors" under the Bankruptcy Code and their fees, therefore, should have been accounted for in any representation, 2) Kubotek engaged in "price fixing" during the auction of the Debtor's estate and 3) White's right to procedural due process was violated because he was not permitted to conduct discovery or afforded a hearing in connection with his motion to vacate.

## II. Legal Analysis

### A. Standard of Review

In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts". In re Chestnut Hill Mortgage Corp., 158 B.R. 547, 549 (D.Mass. 1993). However, a district court must accept the bankruptcy judge's findings of fact unless

a review of the record demonstrates that they are "clearly erroneous." Id.

**B. Analysis**

White's principal argument is that Attorneys Wilton and Goldberg committed a fraud on the court when they represented that $750,000 would be available to "creditors". A fraud on the court occurs:

> where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). Appellant falls decidedly short of proving that standard for several reasons.

1. No fraud was committed because the Bankruptcy Court was not misled. At the hearing, in response to a question from the Court, Attorney Goldberg offered his estimate of the projected financial condition of the estate and concluded that "we're still netting $750,000 for distribution to creditors". Appellant devotes much of his brief to arguing that post-petition attorneys are not "creditors" under the Bankruptcy Code. That contention (which this Court need not address) misses the point, however, because the Bankruptcy Judge understood Attorney Goldberg's statement as including post-petition attorneys as "creditors", as evidenced by the Court's ruling that:

> no representation was made to the Court with respect to the dividend to unsecured creditors. Administrative claimants are also creditors who are entitled to share in the proceeds held by the estate.

(emphasis in original).

Moreover, at the hearing, Attorney Goldberg described how he arrived at a figure of $750,000:

> if you take the proceeds minus the IMSI share, that's $990,000; add back the $25,000 that IMSI is contributing to the cost of litigation so now we're up at $1,015,000, we subtract the $270,000 that IMSI gets back, we're at approximately $750,000.

Because professional fees were not included in those figures, it was painfully obvious that they would necessarily be subtracted from the $750,000. Except when engaged in pro bono work (which this clearly was not), attorneys do not work for free. The Bankruptcy Judge understood perfectly well that the $750,000 would be depleted by professional fees. That he may not have appreciated the magnitude of the eventual charges does not render the statement fraudulent.

2. A review of the November 6, 2003 hearing transcript indicates that Attorneys Wilton and Goldberg were not making assertions or offering assurances, they were providing impromptu estimates at the Court's request. In response to a question from the Bankruptcy Judge about the amount of money which would remain for the estate, Attorney Goldberg stated "I believe that its approximately $750,000," a far cry from the "unconscionable scheme" necessary to support a finding of fraud on the court.

3. Finally, White's contention that only $365,000 will be available for unsecured creditors is ironic and potentially misleading. In reaching that figure, he deducts the entire $250,000 that has been reserved to litigate appeals that he has initiated, including the instant appeal and an appeal previously decided against him (Bankruptcy Appeal No. 03-40279-NMG). The Trustee asserts that the majority of the fund remains unspent. The Bankruptcy Court's holding that there was no fraud on the court will be affirmed.

Appellants other alleged grounds for appeal are summarily rejected. The propriety of the auction and sale to Kubotek was litigated during the first appeal (Bankruptcy Appeal No. 03-40279-NMG) and White may not resurrect that issue by alleging that Kubotek engaged in "price fixing". Both the Bankruptcy Court and this Court have held that the sale was proper and the issue has been closed.

With respect to White's contention that his due process rights were violated, he has failed to raise the issue before the Bankruptcy Court and it is, therefore, waived. In re Weinstein, 217 B.R. 5, 8 (D.Mass. 1998)("appellate courts will not consider an issue which was not before the trial court and which is first raised on appeal."). See also In re Rauh, 119 F.3d 46, 51 (1st Cir. 1997)("[because] the bankruptcy court was never afforded an opportunity to consider the theory and authorities now advanced

... we decline the invitation to do so on appeal"). For all of the above reasons, this appeal will be dismissed.

**ORDER**

In accordance with the foregoing, this Court affirms the Bankruptcy Court's Orders denying appellant's motion to vacate (Docket No. 330), denying appellant's motion for reconsideration (Docket No. 334) and allowing the Trustee's motion to correct his opposition (Docket No. 335) and this appeal is hereby **DISMISSED.**

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 12, 2005